UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

CIVIL ACTION NO. 08-211-KKC

PAMELA ANN GOLICK,                                                                          PLAINTIFF

v.                                            **OPINION AND ORDER**

MICHAEL J. ASTRUE,                                                                          DEFENDANT
Commissioner of Social Security

\* \* \* \* \* \* \*

This matter is before the Court on the parties' cross motions for summary judgment. [R. 15, 16]. For the reasons stated below, Plaintiff's motion for summary judgment [R. 15] is denied and Defendant's motion for summary judgment [R. 16] is granted.

**I. Introduction**

Plaintiff filed her first application for supplemental security income on February 2, 2002. The Social Security Administration denied that application initially and upon reconsideration. After a hearing before an Administrative Law Judge ("ALJ"), her application was again denied in a written decision issued November 24, 2004.

Plaintiff filed this application for supplemental security income on September 19, 2005, alleging disability beginning November 1, 2001. This application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held before ALJ Frank Letchworth on November 28, 2007, in Middlesboro, Kentucky. Plaintiff appeared at the hearing and testified, as did James Miller, an vocational expert. The ALJ denied Plaintiff's application in a written decision issued February 7, 2008. The Appeals Council denied Plaintiff's request for review,

1

and, therefore, the ALJ's decision stands as the Commissioner's final decision and is now ripe for review.

## II. Discussion

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

### B. Overview of the Process

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to

determine whether a social security disability claimant qualifies as legally disabled, and is thus deserving of disability insurance benefits and supplemental security income. *See* 20 C.F.R. § 404.1527(e)(1). To make this determination, the ALJ follows a five-step sequential analysis. First, the claimant must show that she is not engaging in substantial gainful activity. *Id.* § 404.1520(a). If the claimant is engaging in substantial gainful activity, then she is not disabled regardless of her medical condition, age, education, or work experience. *Id.* § 404.1520(b). Second, the claimant must show that she has a mental or physical impairment or combination of impairments that is severe. *Id.* § 404.1520(a). If the claimant does not have a severe mental or physical impairment or combination of impairments, she is not disabled. *Id.* § 404.1520(c). Third, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment. *Id.* § 404.1520(a). If the claimant's impairment or combination of impairments meets or medically equals a listed impairment, then she is disabled. *Id.* § 404.1520(d). If not, then the ALJ must determine the claimant's residual functional capacity before proceeding to the fourth step. *Id.* § 404.1520(e). In the fourth step, the ALJ determines if the claimant has the residual functional capacity to perform her past relevant work. *Id.* § 404.1520(a). If the claimant cannot perform her past relevant work, then the burden shifts to the Commissioner in the final step to show that there is sufficient work in the national economy that the claimant can perform given her residual functional capacity, age, education, and work experience. *Id.*; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If no such work exists, then the claimant is legally disabled. *Id.* § 404.1520(a).

**C. The ALJ's Decision**

In his written decision, the ALJ first discussed the binding effect of the written decision

in Plaintiff's prior application, noting that "unless there is new and material evidence or a showing of 'changed circumstances' relating to a determination of the present claim, the undersigned is bound by previous findings and determinations." [Administrative Transcript ("Tr."), p. 9]. The ALJ then stated that although the evidence did not warrant a change in Plaintiff's exertional limitations, new evidence warranted a greater restriction in Plaintiff's mental residual functional capacity. [Tr. 9]. Nonetheless, the greater restrictions did not warrant a different outcome from the prior case. [Tr. 9].

After that introduction, the ALJ outlined the five-step analysis set forth in the Social Security Administration's disability regulations and found at 20 C.F.R. §§ 404.1520 and 416.920. [Tr. 10-11]. The ALJ first determined that Plaintiff has not engaged in substantial gainful activity since the date of her application. [Tr. 11]. The ALJ then determined that Plaintiff has the following severe impairments: anxiety disorder, personality disorder, and affective disorder. [Tr. 12]. The ALJ next concluded that Plaintiff's impairments, individually or in combination, do not meet or medically equal a listed impairment. [Tr. 13]. The ALJ then determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with several nonexertional limitations: she is limited to performing one to two steps instructions and requires an objective focused work environment; she can handle casual interactions with others, but can perform no highly stressful work such as a quota or production rate work; she can perform no work requiring more than GED level experience; and she can perform no work that requires contact with the general public. [Tr. 15]. The ALJ subsequently found that Plaintiff has no past relevant work. [Tr. 20]. Finally, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff can perform despite her

limitations, and thus she is not disabled. [Tr. 20-21].

**D. Analysis**

Plaintiff argues that the ALJ erred when determining her residual functional capacity. Specifically, Plaintiff challenges the ALJ's rejection of a medical opinion provided by Dr. Howard Belkin and two opinions provided by Dr. Robert Spangler.[1]

**1. Dr. Belkin's Opinion**

Dr. Belkin conducted a consultative examination of Plaintiff on November 28, 2005. [Tr. 455-457]. In his evaluation, Dr. Belkin noted that Plaintiff primarily complains of anxiety and depression. [Tr. 455]. Among his observations, Dr. Belkin noted that Plaintiff was appropriately dressed and generally cooperative. [Tr. 455-456]. Dr. Belkin described her mood as depressed and very anxious and her affect as restricted and constricted. [Tr. 455]. He also noted that her relationship with he and the office staff appeared to be nervous. [Tr. 455]. Her thought process and content appeared normal, as did her sensory and mental capacity. [Tr. 456-457]. Dr. Belkin diagnosed Plaintiff with panic disorder with agoraphobia and major depressive disorder, and he assigned her a global assessment of function ("GAF") score of 45, which indicates a serious limitations in psychological functioning. [Tr. 457]. Dr. Belkin did not offer any specific functional limitations resulting from Plaintiff's impairments, and he asserted that she could manage her own benefits. [Tr. 457].

The ALJ discussed Dr. Belkin's medical opinion, particularly noting the serious psychological limitations implied by the assigned GAF score. [Tr. 16]. The ALJ noted that this

---

[1] The first medical opinion attributed to Dr. Spangler was co-authored by Dr. Spangler and Ms. Kathy Miller, a licensed psychologist consultant.

score was inconsistent with scores assigned by other medical professionals and rejected the GAF score for that reason. [Tr. 17]. The ALJ noted, however, that Dr. Belkin's substantive findings were consistent with the moderate limitations suggested by the weight of the evidence. [Tr. 17].

Plaintiff argues that the ALJ erred by rejecting the GAF score assigned by Dr. Belkin in favor of the higher score assigned by Dr. S. Raza, Plaintiff's treating psychiatrist. Plaintiff's argument is without merit. First, as a treating source opinion, Dr. Raza's opinion is entitled to greater deference than the opinion provided by Dr. Belkin, who only examined Plaintiff on a single occasion. 20 C.F.R. § 404.1527(d)(2). Second, as the ALJ discussed, Dr. Raza's assigned score of 60 is consistent with other medical evidence in the record. [Tr. 411]. In August, 2007, Dr. Spangler provided a medical opinion in which he also assigned Plaintiff a GAF score of 60. [Tr. 395]. Although Dr. Spangler assigned Plaintiff a lower score (50-55) in a subsequent opinion, even the lower score falls in the range indicating only moderate psychological limitations. [Tr. 357]. Finally, nothing in Dr. Belkin's observations and substantive findings support the serious psychological limitations suggested by a GAF score of 45. Accordingly, the ALJ properly rejected the GAF score assigned by Dr. Belkin.[2]

## 2. Dr. Spangler's Opinions

Dr. Spangler examined Plaintiff on two occasions. On both occasions, Dr. Spangler diagnosed Plaintiff with anxiety disorder, moderate, and dependent personality disorder, moderate. [Tr. 357, 393]. In his second assessment, he also diagnosed Plaintiff with post traumatic stress disorder, moderate, which may have resulted from a pit bull attack in 2001 and

---

[2]Plaintiff points out that later in his opinion, the ALJ equated the GAF score assigned by Dr. Raza with the score assigned by Dr. Belkin. [Tr. 17]. Review of both records demonstrates that this is simply a misstatement on the part of the ALJ, and the error provides no grounds for reversal.

appears to cause frequent nightmares. [Tr. 354]. Dr. Spangler assigned Plaintiff a GAF score of 60 in his first evaluation and a score of 55-50 in the second, both of which indicate moderate psychological limitations. [Tr. 357, 393].

Despite the GAF scores assigned by Dr. Spangler, both evaluations place severe restrictions on Plaintiff's ability to work. In his first evaluation, Dr. Spangler noted that Plaintiff was dependent on others for transportation and she does not drive. [Tr. 394]. He concluded that Plaintiff's attendance at work would "probably" not be adequate and she "most likely" could not work on a consistent basis. He also stated that she could not complete a normal work day or work week. Further, he opined that Plaintiff might need special supervision while on the job; however, he also stated that she most likely would not be able to accept instructions from a supervisor. Additionally, Dr. Spangler stated that Plaintiff most likely would not be able to adequately interact with co-workers in the public or deal with competitive work stress. Dr. Spangler largely attributed Plaintiff's limitations to her anxiety disorder and dependent personality disorder.

In his second evaluation, Dr. Spangler again opined that Plaintiff has severe mental limitations in her ability to work. [Tr. 360-362]. Specifically, he assessed her ability to deal with work stresses, perform complex instructions, and demonstrate reliability as poor, indicating that Plaintiff has no useful ability to function in these areas. He also stated that Plaintiff would miss more than two days a month from work due to her impairments. Dr. Spangler again based his assessment of Plaintiff's limitations on her anxiety disorder, dependent personality disorder, and post traumatic stress disorder.

The ALJ thoroughly discussed both evaluations provided by Dr. Spangler. [Tr. 18-19]. In

7

both cases, he rejected the severe limitations suggested as inconsistent with the weight of the medical evidence and inconsistent with the GAF scores assigned by Dr. Spangler, as well as the GAF score assigned by Plaintiff's treating psychiatrist, Dr. Raza.³ Accordingly, the ALJ included several moderate limitations in his assessment of Plaintiff's residual functional capacity. [Tr. 15]. As mentioned, the ALJ found that Plaintiff can handle only casual interaction with others, she can perform no highly stressful work, and she can perform no work that requires interaction with the general public.

In this case, substantial evidence supports the ALJ's decision to reject the mental limitations contained in Dr. Spangler's evaluations. As the ALJ indicated, Dr. Spangler assessed Plaintiff with severe work-related limitations. However, the severity of the stated limitations contradicts the GAF score of 60 assigned by Plaintiff's treating psychiatrist, which indicates that she is only moderately limited by her mental impairments. In the same manner, the severe limitations stated by Dr. Spangler are inconsistent with the GAF scores contained in his own evaluations, which also reflect only moderate impairment. Further, the rejected limitations are inconsistent with Plaintiff's treatment records from Cumberland River Comprehensive Care Center. For example, she frequently interacted with the staff in a friendly and cooperative manner, she was usually alert and attentive during the evaluations, and she was always assessed as stable. [Tr. 309-326]. Accordingly, the record provides substantial evidence that Plaintiff is not severely limited by her mental impairments as suggested by Dr. Spangler's evaluations. The

---

³The Court notes that the ALJ improperly concluded that Dr. Spangler attributed Plaintiff's attendance problems to her inability to drive. The evaluation clearly states that he attributed her attendance problems to her anxiety disorder. [Tr. 394]. The Court finds this error immaterial, however, as substantial evidence supports the other reasons stated by the ALJ for rejecting Dr. Spangler's evaluations, which includes their inconsistency with Plaintiff's treatment records and evaluations provided by Plaintiff's treating psychiatrist, Dr. Raza.

ALJ's assessment of Plaintiff's residual functional capacity must therefore be affirmed.

### III. Conclusion

Substantial evidence supports the ALJ's finding that Plaintiff is not disabled. Accordingly, the ALJ's decision must be affirmed.

Therefore, for the reasons stated, the Court HEREBY ORDERS:

(1) Plaintiff's Motion for Summary Judgment [R. 15] is **DENIED**; and

(2) Defendant's Motion for Summary Judgment [R. 16] is **GRANTED**.

Dated this 16th day of September, 2009.

Signed By:
*Karen K. Caldwell*
United States District Judge